Patricia Richman May it please the Court, my name is Patricia Richman and I'm here today on behalf of Gregory Bonnie. The First Step Act is clear. Only prisoners who are serving a sentence for one of 68 ineligible convictions are unable to earn credits towards early release. In this case, Mr. Bonnie has two sentences to serve. A 10-year drug sentence, which the government agrees is eligible to earn, and a two-year supervised release violation, which is not. The First Step Act's text, context, and purpose show that Mr. Bonnie is not serving a sentence for an ineligible conviction when he is serving his eligible 10-year sentence. Despite this, the District Court held that Mr. Bonnie's two-year sentence disqualifies him from any opportunity to earn credits over his entire 12-year term. This disregards the plain language of the First Step Act in favor of an entirely separate... Let me just reduce this. I think this case is an interesting case and we haven't really in this area, but as I understand it, you have a multiple component sentence. It has two components, one which is eligible and one that's not eligible. And whether it's consecutive or concurrent doesn't matter. And the question is, when one eligible is merged with an ineligible, does that disqualify the whole sentence? And as I understand it, for administrative purposes, if this is an administrative conduct that BOP is doing, we're to treat the whole sentence as a single sentence. There's a separate provision in the statute that says that. And up to now, all the circuit courts, five of them or whatever they are, have concluded that since it's treated as a single administrative sentence, if a component is ineligible, the whole thing's ineligible. I don't know if that result necessarily follows, but it seems to me that's the issue before us. And I think it's a very interesting issue. And I gather you would agree that's what we're coming to, is when you have a multiple sentence which has one component eligible, one component ineligible, is the whole sentence disqualified. I agree, Your Honor. That's the issue, right? Yes, Your Honor. And with respect to those courts, I think there's sort of two fundamental issues. First is that they spent insufficient time within the immediate context of the eligibility provision, and that is the First Step Act itself. And second, that they spent too cursory a review on the meaning of the aggregation provision with respect to the unique and mandatory time credit program that was created in the first step. But counsel, so in your brief, you spend a good bit of time, just like you just said, starting with the First Step Act provisions, 3632D, and talking about that, how the focus there is on a single eligible or ineligible sentence. And it seems to me there's a pretty good argument that if you look just at 3632, that's what they're talking about. But we got to make some sense of 3584, 3485. I'm sorry if I get the aggregation statute. And to follow up on Judge Niemeyer and your response, it seems like you agree that that needs to be grappled with. And I take it from your brief, the way you say it doesn't apply is your contention that this is not an administrative function. And your argument that it's not administrative seems to be that there's not much discretion. Is that right? Am I characterizing your arguments fairly? That is in large part my argument, that the eligibility determination is not an administrative functioning. To be sure, BOP has to apply the rules that Congress has written for it. So they've got to line up the paperwork and see if the convictions match. But it can't exceed the need. Why does administrative, why does it, you seem to equate discretionary and administrative. And those two things, just intuitive to me, don't seem to be the same. I mean, I think you could have administrative functions that are discretionary and administrative functions that aren't. I'm having trouble understanding why administrative, why it's not administrative just because it's less discretionary. Thank you, Your Honor. BOP has not articulated an administrative purpose of the First Step Act that is actually served by aggregation, nor could it. First Step Act time is earned 10 for 30 days or 15 for 30 days. BOP's job is to track the number of days you've earned and tally it up and give you that amount either in early release to supervised release or early transfer to home confinement. And that's different from other sentencing credit programs like Good Time Credit, which- I agree. I'm not quarreling that it's different. I mean, or at least for purposes of question, I'm conceding that it may not, those others seem to have a more discretionary judgment or role involved. But why does that matter? That's a difference, but why does that make it non-administrative? The conflict here is between the way that BOP has interpreted administrative purposes to interact with the 68 categories of ineligible convictions laid out in the First Step Act. And it is treating 3584 as an override, which allows it to treat a sentence for an eligible conviction as ineligible to earn credits. So for the 10 years Mr. Bonney is serving his drug offense, he gets no credit. And that's why this issue comes up. I think the discretionary- I agree with that, but maybe I'm not being clear. I understand your argument, and it has a lot of common sense to me, quite frankly. I mean, when I look at this, I'm like, this seems like a weird result, just to be perfectly frank. But, you know, when you read the statute, it seems by your own, you know, argument to depend on whether the BOP's role is administrative or not. And I keep going back to the arguments you seem to be making is it's not administrative because it's not discretionary. And I don't know why it has to be discretionary to be administrative. And that's what I'd like for you to answer me, if you're able, if you could, please. Thank you, Your Honor. I think that when you look at the case law interpreting the RDAP statute and the application of the aggregation provision to BOP's interpretation there, it depends heavily on BOP's exercise of discretion to determine who could or could not be eligible to go to early release. Well, I didn't- I share Judge Quattlebaum's question. Why are we focusing on discretion at all? I'm thinking of the Supreme Court's decision in Wilson, and the notion is the sentence is imposed by the judiciary. And the judiciary cannot anticipate credits, jail time credits, either under the Good Credits Act or under this one. They just can't anticipate them. And it commits the defendant to the custody of the Attorney General and the Bureau of Prisons. And at that point, they administer the judgment that was entered. And the statute says for purposes of that administration, the sentence is treated as a single sentence. And then the question comes, which I think is the hard question, is if it's a single sentence and one component is eligible that made it up and one's ineligible, does that make the whole thing ineligible? And that has been the practice that has been followed and the courts have followed. Now, it seems to me it follows in some sense from these statutes and from the concept that the judiciary is finished with the case when it commits the prisoner to the custody of the Attorney General who's in the executive branch and administers the judgment. So I think regardless of whether it's discretionary or not, the sentence is being administered by the executive. But the question still comes then is how is it administered? I think it's a tricky question. I don't want to demean your argument because I think it's a pretty good one. Thank you, Your Honor. Briefly, I think the reason I'm talking about discretion is because I believe BOP is exercising its discretion to apply the aggregation provision here. And one important point that I don't think has been acknowledged by or brought before prior courts is that BOP doesn't always do that. It doesn't always apply aggregation of sentences, particularly when the sentences were imposed. It has to treat it under statute. It has no discretion. It has to treat it for administrative purposes as a single sentence. And so the question then is what does that mean? And it seems to me if we looked at other contexts, we'd have to examine that question under that, too. I don't know which other contexts you're talking about, and I haven't conducted that analysis. But the argument here is in treating the sentence as a single sentence, it has a component that disqualifies it. And that's the argument. Now, your argument is that you can look at the components, and if one component, in this case, is two years served, then why doesn't he get credit at least after the two years? And I think it's a pretty good question. Can I follow? I think you were talking about the BOP doesn't always do that. Are you talking about in the parole and the treaty context? Is that the references in your brief to that? Those are two of the examples. They also don't aggregate Sentencing Reform Act and Prison Litigation Reform Act sentences because they had slightly different definitions of good time credit. They don't aggregate the BCCLEA amendments, the post-BCCLEA, and I'm saying the acronym because I cannot remember exactly what it stands for, but they don't aggregate there. Their sentencing computation manual is 600 pages long. It goes through every single permutation of every wrinkle in sentencing law and how they need to apply that to administer different sentences. Is your point in this argument, maybe it's both, but is your point that this shows they have the ability to de-aggregate or disaggregate, whatever, to unbundle it? I'll just say that. That's a doable thing, or is it your point that those indicate that this is not an administrative function? Both, Your Honor. I think that it shows that BOP has not always viewed itself as bound by an ironclad aggregation mandate and has interpreted statutory text to trump how it administers sentences that award credits differently. I think it also does show that BOP can track and award credits. I think that's clear from the record. The Pizarro case is one of the cases where BOP was defending its decision to de-aggregate sentences that were SRA. So it sounds like de-aggregates a word. Right. I am not confident that is an actual word. Well, I'm not. I didn't know. So can I ask you something else that was in your brief that I thought may be one of, you know, the stronger arguments is the specific aggregation language in the Second Chance Act? Yes. I mean, presumably 3584 would apply to that act as well, yet there's some specific aggregation language beyond just what's in 3584C. And I think the point is, well, if you have 3584 does it, why do you need it somewhere else? And the absence of that in the Second and First Step Act indicates, you know, you don't aggregate here. So I get your argument. I may not have said it, you know, as well as you would, but I think I understand it. The warden, I think, responds by saying something to the fact that there's no computations involved with the Second Chance Act. So seemingly that difference matters. Do you have a response to that? I disagree with that assertion. The provision in question operates by allowing people who meet the criteria to be classified as an eligible elderly offender to go to home confinement or RRC earlier than the Second Chance generally allows. So the amendments here moved it from two-thirds of your sentence done, you get to go, to 66 percent of your sentence you get to go. And if you look in the record, you will even see Mr. Bonney's sheets, and I'll give you the site when I come back up, there's a computation in there for his eligible elderly offender date. So I disagree with the government. So you disagree with the premise that there's no computation aspects involved. But, I mean, even if there are, that wouldn't be the end of the question, would it? I mean, just because one involves computations and others doesn't still, there's that specific language in one. Right. I certainly think that it shows, number one, Congress knew how to make clear when multiple sentences would sort of taint the entire term of imprisonment. And number two, that it didn't act against a background principle. That's reflected, too, in the Second Chance Act, which that provision amended, which defined term imprisonment to specifically reach multiple sentences. And that was in 2007, which also postdates the 1987 aggregation provision. I think the last point I'd like to emphasize is just why this squares with the purpose of the First Step Act, which was to create a program to incentivize people to earn credits towards early release. It's not a handout. In order to get the credits, you have to successfully participate in programming. In order to apply the credits, you've got to prove that you're low risk. That means that you can't misbehave in prison. You can't do other things that are going to disqualify you from that. So it's an incentive. And the reason Congress created that was to reduce prison populations and to save money and reduce recidivism. Congress did this with a healthy skepticism towards the Bureau of Prisons and curtailed its ability to discretionarily administer many aspects of this program, reserving for itself setting the rules of how this would work. And I think their decision to not take a categorical approach in listing out disqualifiers, as they had in prior... That cuts against you a little bit, because if 924C is a violation that Congress said, we're not going to allow these credits, when a defendant has multiple sentences which involve 924C, that doesn't reflect just on the sentence. That reflects on the nature of the prisoner, which Congress was focusing on. So that if we have a 924C component, it seems to me the better course in carrying out the purpose would be to note that 924C identifies a particular inmate who committed a particular crime that Congress did not want to create this incentive for and have him out on the street earlier. And here we have a defendant that has that component, even though he has another sentence for which he would qualify. In other words, carrying out the purpose includes carrying out the purpose of the exceptions. And so I think it cuts both ways, probably. May I briefly answer, Your Honor? I would just say that Congress didn't include any criminal history disqualifiers in the First Step Act. They have that list of, I don't know how many there are, it's a long list. Of course, 68. And in that list, they made a selection, and that selection is based on the conduct involved in those crimes. They obviously decided that certain types of crimes we do not want back on the street, maybe because recidivism is high or whatever their judgment was. So my point is, if a defendant qualifies under, has an ineligible sentence, it doesn't just reflect that little two-year sentence. It reflects the nature of the inmate which Congress tried to, those crimes are surrogates for the type of inmates that will not get the benefit. And so, if you're looking at purpose, you have to look at that to include that too, I think. Two quick points, Your Honor. Number one is that Mr. Bonney doesn't get to earn credits when he is serving the sentence for the 924C, which means he has fewer credits to apply. I understand that. But he, you're again going back to the nature of the particular sentence involved, and my point is, a little broader point, which is if you're looking for the purposes of act to create incentives to reduce recidivism and to reduce the population, Congress clearly did not want to reduce the population and reduce the sentence of certain defendants who committed certain types of crimes. And it seems to me once you've committed that, you disqualify yourself, because every crime on that list is probably often committed, coupled with a bunch of other crimes for which the sentence may enhance. And I just don't know how far we could go in describing purpose. I mean, it's a good purpose for those inmates who qualify who don't have one of those sentences. But here we have that peculiar circumstance where he does have an ineligible sentence, but he also at the same time has an eligible sentence. And the question is, does he get the benefit for the ineligible? Do we go back and break it apart? Your argument, I suppose, would be after the two years he should then start qualifying. Yes, it is, Your Honor. I understand that. Yeah. Thank you. Okay. Thank you very much. All right. We'll hear from Hamlet. May it please the Court. My name is Kim Hamlet, and I represent the United States on behalf of the Warden of FCI Williamsburg. This case boils down to whether determining eligibility for First Step Back is the administrative purpose of the BOP. It is. The First Step Back requires the BOP to implement a program that allows prisoners to earn time credits. The time credit statute states it's serving a sentence. What's administrative about that? Yes, Your Honor. The statute says that a prisoner is ineligible to receive time credits under that paragraph. This is Section 3632. I'll call it the ineligibility provision. If serving a sentence for a conviction, and there, the BOP is responsible for determining whether an inmate has a sentence that has one of these 68 enumerated offenses. Can a prisoner serve a 24 sentence for 144 months? So the... A 24-month sentence, can you serve it for 144 months? No, Your Honor, and the... Won't he be serving that 24 months in 144 months, one for which he is eligible? And I think it's come out in the questioning, but there's something nonsensical going on here. I mean, you've got 144 months that's stacked on as a result of 120, which does qualify, and 24 months revocation, not even an offense then, but a revocation of something that comes onto it, and the question says, the 24 months then says, well, you can't get in for 144 months because Congress clearly didn't intend to apply that First Step Act for something that would go well beyond 24 months, when it appears to me we're talking about he's serving a sentence. Yes, Your Honor, and I understand your question, and I think what's important to remember here is that what the BOP is looking at here with the sentence is, for an administrative purpose, the sentence is 144 months. That is the term of imprisonment, and this is for administrative purposes, so that's not to say... What's your definition of administrative purpose? I mean, I share Judge Winn's just reaction to this intuitively, that just when I... It doesn't seem to make sense, but we got to grapple with the statute, 3584, so what's your definition of administrative purpose? So there isn't a definition in the Sentencing Reform Act or in the First Step Act that we can look to from Congress, but we do have guidance from the Supreme Court in United States v. Labonte, a 1997 decision out of the court that notes other types of sentencing credits, time served credits, residential drug abuse program, the good time credits, and the court says those fall within Section 3584C's administrative purposes carve out. So there... Wilson said the same thing, didn't it? Yes, Your Honor, in United States v. Wilson, the Supreme Court explains that the BOP calculates an inmate's term of imprisonment as an administrative matter, and so here with the First Step Act, the BOP is charged with administering this program and with implementing this ineligibility provision, and in doing so, the BOP must determine whether someone is serving a sentence, and the BOP understands sentence due to the aggregation provision, that 3584, that the sentence is an aggregate sentence. Does 3584 apply to the Second Chance Act? So, the Second Chance Act is a different type of program, and I believe you asked... Everyone likes to say it's a different type of program when they don't like a comparable statute, so I get it's a different type of program. My question wasn't whether they're the same. My question was whether 3584 applies to the Second Chance Act. And I think to kind of further break down your question, my understanding would be that the 3584 tells us multiple terms of imprisonment, whether ordered, termed consecutively or concurrently, must be treated for administrative purposes, right, as a single term, and so I think, to get to your question, really the question is, is the Second Chance Act said the administrative purpose of the BOP? And I think the BOP, I think it would be, you know, that this is a program the BOP is administering, but it's important to remember the difference here between... I got you, and I'll let you talk about the differences, but if the answer is yes, and my instincts would be to agree with you, then it's at least odd that the Second Chance Act went beyond the 3584C, which said aggregated, and had an additional aggregation provision in that statute. And if it already had one in 3584C, why did it need to do another one? And is that not indication, as your colleague would say, that the absence of that one, the absence of that in the First Step Act means you don't aggregate there? So I think what's important about that, there is a term of imprisonment definition, as Your Honor has pointed out, that is in the Second Chance Act of 2007, so that wasn't in the amendments that the First Step Act did to the Second Chance Act. The First Step Act just added this definition for eligible terminally ill offender, and to make the point I was making about it. Fair enough, but we presume Congress knows that. I think it is fair that the additional aggregation section was already in there, but even before that, 3584C was in there before that aggregation provision, the Second Chance Act went into place. So it seems like you either got a superfluous issue with that aggregation language in the Second Chance Act, or you just have a different way of addressing something. I think that Second Chance Act is a problem for you. I think if there's, to make the point I was trying to make earlier as to the different programs here, the Second Chance Act is an early release program, and I think we both agree on that, but with the Second Chance Act, there's not a source of additional time credits. So the BOP doesn't have to calculate these time credits as it does with the good time credits, with time served credits, and with the First Step Act time credits. And there's no, looking at the provision, the aggregation provision, there's no language there to suggest that this was limited to one administrative purpose. It's in the plural, administrative purposes, and the Supreme Court has told us in United States v. Levanti that at least the good time credits, time served credits, those types of credits, fall within this administrative purposes card amount. But to tack on, you have to say Congress did know, at least this is some indication when you look at these statutes, Congress did know how to use this language if it wanted to, and it chose not to use it in that particular statute. Right, and in our brief, we mentioned a district court case that... I know you mentioned it, but I mean, how do you get around it? I mean, it's there. I mean, it's right there, and then you go back and it's not. Right, and in the First Step Act, the silence as to the fact that it doesn't mention aggregation doesn't mean that it doesn't apply. It's a recognition that this First Step Act was enacted in 2018 against the backdrop of an existing statute, the Sentencing Reform Act, that was enacted in 1984, that had the aggregation provision, and that informed, and informs the BOP's understanding of what it must do. It is statutorily required to aggregate for administrative purposes. So, I hear you, I mean, on that point. I mean, you know, it may be perverse to me. It may be unusual to me, but, you know, I kind of get when you look at 3584 and 3632, I at least understand your argument. But, yeah, I have trouble with squaring the specific language in the Second Chance Act with your argument, and maybe that's just not enough, that's just a wart in your argument that we have to, you know, no argument's perfect. But I don't, you know, it seems to me just because it's a different program doesn't satisfy, that doesn't really allow us just to kind of not consider it. And I understand, and I think if there's ambiguity, certainly our position is there isn't ambiguity here in reading the First Step Act in conjunction with the Sentencing Reform Act, but if there is ambiguity, the Court can certainly look to legislative history, and there's legislative history that is cited in Mr. Bonney's opening brief and in the amicus brief. Well, if there's ambiguity, I mean, wouldn't you, what about, I mean, different people have different views of legislative history, let's just say that, and assume some people don't think that's very helpful in discerning intent. If you don't look at legislative history, do you get to the rule of lenity? No, Your Honor, the rule of lenity does not apply here, because Section 3632 in the First Step Act, it's not a criminal statute, and it's not the functional equivalent of a criminal statute. So the Court wouldn't go to the rule of lenity, and also wouldn't get to the rule of lenity because there's no grievous ambiguity or uncertainty here in the statute. But quickly, just as to the legislative history, the amicus brief cites Senator Durbin, and he was one of the co-sponsors of the First Step Act and the Senate bill that became the First Step Act, and the amicus cites Senator Durbin on page 7 of their brief, and there they cite Senator Durbin's remarks about how this was a bipartisan bill, it had support from both sides of the political spectrum, but they don't cite a later portion of a speech on that same day in the congressional record. It's at 7743, the amicus cite 7742 of the record, but at 7743 Senator Durbin said, our bill is 60 pages long, more than a third of the bill is filled with a list of over 60 different federal crimes, and we say if you committed this crime, you are not eligible as a federal prisoner for the rehabilitation program in this bill. And Senator Durbin also said, we want to focus tax dollars on programs that have proven results, and unless they commit one of the crimes that make them ineligible, we offer these to prisoners. So there, even from one of the co-sponsors of the bill, it's clear that if if someone is serving a sentence, the BOP is understanding the sentence as it must to be an aggregate sentence, that that prisoner is not able to earn these time credits, but they are able to earn, there are other incentives in the First Step Act in section 3632 that are available to them. There's phone privileges, visitation privileges, there's just not the ability to earn these time credits. You have an in quorum with the assertion that the BOP can, does in fact, disaggregate sentences and can parse these sentences for certain purposes? So this isn't, and I believe that my colleague mentioned that. That's my question, my question is do you agree that the BOP can do that? Yes, the, and this isn't a question of whether the BOP can de-aggregate, and I believe in fact it does. There is de-aggregation in other contexts, and this isn't a question that, as I said, as to whether this can be done, it's a whether. You have no quorum with saying that one cannot be serving 144 months, or 24 ineligible sentences. In other words, that when you put those together, that he is not serving a sentence for 24 months for the full 144 months. So you could, they could parse them out. That could happen. So the BOP, this isn't a question of whether this can happen, it's what is Congress required, and what is statutorily required? We went there earlier when we were dealing with the statute, but in terms of there is an administrative type issue here that you're dealing with, I'm only dealing with what could be done, because if it's administrative, as you indicated, it's one thing. I agree, the statute does control here. When you go back into the statute, you give it some legislative history, just Senator Durbin, but there's a whole purpose of this act, in terms of to reduce recidivism, cannot possibly be fostered if you can negate it with 24 months, when it's coupled with a sentence that does qualify for it for 120 months, if we're going to go in terms of what Congress was intending or trying to do outside the statute. But I'm only dealing with just this, what I think you're terming as an administrative thing of what can be done, and the practicality of it, and that is that it can, and in fact, there are sentences that are de-aggregated, and here you've got an instance in which you've got this 24-month sentence that is eligible, because it's enumerated, 120 that's eligible, 144 months, and then you've got that language in a time where our credit system is serving the sentence, and we all have to agree that one is not serving a 24-month sentence for the entire 144 months. So, it seems to me there's a common sense application here that if you can do this, just de-aggregate it. So I would say that it wouldn't be as simple as your Honor has explained it, in that there isn't any indication in the record for this case, or in other cases, as to which of these sentences would run first. It seems that Mr. Bonney's argument would be that he has the ineligible offense, it's 24 months, and that when that's over, then he can earn these credits. He didn't say that. He just says, tell me which one I'm running. I mean, even if it's, I don't, maybe his argument will be one should run before the other one. But even if the longer one runs, at least that gives him some time to know what he's talking about. I understand the point, Your Honor. What I was trying to say is that if someone has consecutive sentences, as we have here, where you have an ineligible offense, an ineligible offense, and let's say the ineligible offense... I don't think, you know, the whole discussion seems to be focusing on an eligible or ineligible sentence. And the statute focuses on the prisoner. The subject of the sentence says a prisoner is ineligible to receive time credits. If he is serving a sentence of 924C. So it says the prisoner disqualifies himself because he has been convicted and serving the sentence under one of the statutes. It doesn't disqualify the sentence, it disqualifies the prisoner from getting credits. And it seems to me that pulls toward anybody who is serving a 924C, regardless of what other sentences he has, is disqualified. I mean, if you say a sentence for a 924C violation is ineligible, that would be totally different than saying a prisoner is ineligible. I'm reading right from the statute itself here. And the subject is the prisoner is disqualified because of particular conduct. Because he has a conviction for a 924C. And your Durbin language seems to just support that. Yes, Your Honor. And as to the BOP's understanding of what it's statutorily required to do for administrative purposes, that the sentence for the prisoner in BOP's custody is this aggregate term of imprisonment. But isn't that like taking any one of these words and focusing on it? A prisoner? I mean, who else are we talking about? We're talking about prisoners here. It's the language, he is serving a sentence. The prisoner is what he's doing. The individual is who he is. He's a prisoner. We know he's a prisoner. He is serving a sentence. And we agree, he is not serving this 24 sentences for 144 months. Senator Durbin, notwithstanding, it's very clear we don't go around citing statements from senators' legislative history as being anything near authoritative. All kinds of stuff happens on a Senate floor where they're puffing and talking and going on. That means nothing when you come up here. It's nice and it supports your point, and I grant you for saying it, someone agrees with you. But that's all it means. There's nothing authoritative about it at all. But Judge Nima makes a great and interesting point. If you're going to focus just on the prisoner in that act, yeah, you're going to get there. But this statute is concentrated on he is serving a sentence. And what we have here is something that you have admittedly said there are offenses for which, or instances in which the prison has de-aggregated these instances. It can do it here. It can pass it here. So maybe that walks it into a different area, but it gets into this whole question of if you're going to say something administrative, and why are you doing it in this instance, and why are you not doing it in that instance? And what is the answer to that? Why is it that some are de-aggregated and some are not? So the examples that my colleague cites as to the parole commission and the bilateral treaty— No, not your colleague. I want to hear your answer as to why is it that the BOP de-aggregates certain sentences and passes them out and not others. Yes, Your Honor. And I was just referring to my colleague's examples just to answer the question— No, I want to hear your answer. I didn't say what your colleague said. I want to hear your answer. And my answer is that in those contexts, there's, for example, the treaty. There's a bilateral international treaty, for example, that my colleague has cited. And those are specific types of sentences that are not at issue here that have specific requirements for the BOP as to the de-aggregation. But when the first step back was enacted in 2018, it was against the backdrop of this aggregation provision, which is really at the heart of what the BOP does here in terms of administering a sentence. Is that—I want to make sure you fully answer, Judge Winn—but as part of that, is whatever they did with that treaty administrative? Sounds administrative to me, and yet you're de-aggregating. There are specific requirements within the treaty that requires the BOP to de-aggregate. So it's not as if there's a discretionary decision that the BOP is making that it's deciding to do that here. So is your position that administrative—I thought you disavowed that—maybe you don't. I can't remember what you said about that. Are you now saying that administrative requires discretion? No, Your Honor. What I'm saying is that administrative refers to—just looking back to what the Supreme Court told us in the United States v. Labonte, what is in this carve-out for administrative purposes? And it is this administration of time credits and sentencing credits, time served, good conduct time, the residential drug abuse program, and the First Step Act's time credits is yet another example that falls into this administrative purposes carve-out. I see my time is almost up, and the final point I would just make for Your Honors is that this issue has been addressed by courts nationwide, and several circuits have concluded that the BOP is properly aggregating these sentences when determining eligibility. And in fact, there's a panel of the Fourth Circuit—I believe, Judge Niemeyer, you were on that panel— that upheld the district court's conclusion that there was no error in deciding that someone was ineligible where they had a 924C conviction, the ineligible offense, and then the eligible drug offenses. Can I—this may take you a little bit over, but no one has argued this, including Mr. Bonney, but I wonder if an interpretation—certainly, we've got to follow the Supreme Court, and you're right to cite to those cases, so I'm not suggesting we don't. But a way to think about administrative is ministerial. You're just kind of doing the nuts and bolts type stuff. And that would be as opposed to things that affect substantive rights. I mean, ministerial matters versus substantive rights matters. Is there anything to that description of what's administrative or not? I mean, that's just me thinking about it, so maybe that's irrelevant. But I wonder if that's not an appropriate way to think about administrative versus non-administrative. I think it is a fair way to think about this. And if we think about what the BOP is doing here with this ineligibility provision, it has to look at the prisoner and see his aggregate term of imprisonment, and then see if that includes any of these ineligible offenses. And that requires administrative work from the BOP. Just for an example, the 65th offense—so it's not the one we're talking about, 924C. It's another offense relating to trafficking heroin. And it says that this was one of these ineligible offenses if the sentencing court finds that the offender was an organizer, leader, manager, or supervisor of others in the offense. And so there, the BOP has to do some administrative work of looking at the pre-sentence investigation report, the statement of reasons, to see was this person found by the district court to be a leader or organizer. It's not a decision the BOP can make. It's something it has to do as an administrative matter of looking to the relevant documents to make that decision. So I think that's a fair way to view this. If there's no questions, I just ask the court to affirm the judgment below. Thank you. Ms. Richman. Thank you. Just briefly, Judge Wynn, I think that your question about why does BOP aggregate some sentences but not the others gets to the heart of this case. Because BOP has conceded today that it de-aggregates sentences in other contexts. This aligns with BOP's policies, which, quoting from one about the PLRA and the Sentencing Reform Act, it says BOP doesn't aggregate sentences there because of the statutory differences between the manner in which a PLRA sentence must be treated in relationship to other sentences. And that's Program Statement 5880.28 at page 78K. BOP recognizes that the statute sets the meets and bounds of what it can and cannot do. So what does that mean? I mean, I think, let's just take that statement or assertion that BOP de-aggregates at times and is not doing it here. I mean, one way, I mean, that might show some arbitrariness that might create an issue in terms of the Administrative Procedures Act. But I'm trying to make sure I understand if we accept that, does that mean you win or does that, because it could still be administrative and they just aren't consistent in it. So I'm trying to figure out if that's the case, maybe you have some sort of challenge that's a little different that there is arbitrariness in the application of the act. But if the statute says it's administrative, it's still administrative and they could do it, but they don't. Does that make any sense? It does, Your Honor. I think what it shows is that BOP is following the law when it administers sentences. I think that it disrupts the idea that there's an ironclad background principle that always applies. And I think that in this case, there are pre-First Step Act sentences and there are post-First Step Act sentences. Congress said people couldn't earn credits for programming they participated in prior to December 21st, 2018, when the First Step Act was enacted. So there's a post-FSA regime. And I think as it has with other conflicting sentencing regimes, BOP has the ability to administer those differences. But it seems to me you got to grapple with 3584 and you got to say, look, we don't even look at that when we're looking at 3632. You know, just as a general proposition. Or you got to say, we don't look at it because it's not administrative. And I hear your brief goes the latter way, I think. And that's why I asked the question, because if it's administrative, whether or not they, if they selectively do it, that may be bad. And that may subject them to some issues. But I'm not sure from a statutory interpretation context, it makes as much of a difference. Why don't you answer that question? We don't have a light for some reason. But that's bad for me. I don't know what happened. I don't think we reset the light here. But why don't you go ahead and answer his question, and we'll call it a day. All right. Thank you, Your Honor. I think that there are aspects of the First Step Act credit program writ large that are administered by Bureau of Prisons. I don't think eligibility determinations are one. I don't think assigning a particular sentence to a particular term is one. I think that's done by the court. The last thing that I wanted to do is to give you the citation. I mentioned JA-94 is where it shows the computation of the elderly offender credit. And then just to thank the court and ask you to please reverse the district court with a direction to deem Mr. Bonney eligible to earn credits. Thank you. Thank you. Ms. Richmond, you have this status. You were appointed by the court, right? But you're a public defender.  But we still want to recognize your service. You helped Mr. Bonney out. And we have a very interesting issue we've presented. And you've done a nice job. Thank you. Well, thank you, Your Honor. Thank you for appointing us to represent him. We'll come down and agree counsel and adjourn for the day. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Paul V. Niemeyer, James Andrew Wynn, A. Marvin Quattlebaum Jr.